IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ELAINE G. CROSS, )
 )
    Plaintiff, )
 )
 ) CIV-13-813-D
v. )
 )
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
   Security Administration, )
 )
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her applications for disability benefits in February 2009 and alleged that

she became disabled on December 19, 2008. (TR 36, 144, 151). Plaintiff has a high school equivalency degree and previously worked as a nurse's aide, telephone operator, cashier, and medication aide. Plaintiff alleged that she was disabled due to lupus, a stroke resulting in loss of use of her left side, hepatitis C viral infection, degenerative joint disease, fibromyalgia, and depression. (TR 226, 271). Plaintiff stated she stopped working on December 19, 2008, when she suffered a stroke. (TR 226).

In February 2009 and in October 2009 Plaintiff completed written Function Reports. (TR 199-208, 277-284). In these reports, Plaintiff stated she lived with and cared for her mentally challenged sister, prepared meals, performed household chores, drove, went shopping two times per month, used a riding lawn mower or hired lawn mowers, attended church and AA meetings, watched television, and talked to friends on the telephone. A third party, Ms. Taylor, submitted a written Function Report for Plaintiff in February 2009. (TR 209-216).

Plaintiff and a vocational expert ("VE") testified at a hearing conducted on July 26, 2011, before Administrative Law Judge McLean ("ALJ"). Plaintiff testified that she has limited use of her left hand for lifting and gripping objects and that she experiences excruciating pain in her legs and lower back with standing for more than five minutes. She uses a heating pad and a back brace for pain relief. Plaintiff testified her sisters help her with personal care, including bathing and dressing, with household chores, and cook her meals. Plaintiff drives her car for short distances several times a week. Plaintiff estimated she could sit for thirty minutes and walk 25 feet.

The ALJ issued a decision in November 2011 (TR 14-25) and found that Plaintiff was not disabled. Following the well-established sequential procedure required by the agency, the ALJ found at step two that Plaintiff had severe impairments of obesity, hepatitis C, and post-cerebrovascular accident. (TR 16). At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of a listed impairment in 20 C.F.R. pt. 404, subpart P, app. 1. (TR 17).

At step four, the ALJ found that despite her impairments Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level with additional limitations of "no climbing ladders, ropes, or scaffolds, [no more than] frequent climbing [of] stairs and ramps, balancing, kneeling, crouching, and crawling, [no more than] occasional stooping," and she could perform only "simple tasks with routine supervision, [with] no public contact, [and] no customer service." (TR 19).

Relying on the VE's testimony, the ALJ found that Plaintiff could not perform her previous jobs considering this RFC but Plaintiff could perform other work available in the economy, including the jobs of screw eye assembler, fruit cutter, and hand bander. (TR 23-25). Consequently, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. Therefore the ALJ's decision represents the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a

determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Analysis of Third Party Function Report

Plaintiff first contends that the ALJ erred by ignoring the descriptions and observations of Plaintiff's friend, Ms. Taylor, as reported in a Third Party Function Report. In this report dated February 8, 2009 (TR 209-216), Ms. Taylor stated that she had known Plaintiff for eleven years and saw her almost daily. In brief responses, Ms. Taylor stated that Plaintiff's sister helped her shower and that Plaintiff watched television, read, talked on the telephone, prepared meals with assistance, made her bed, performed laundry chores with assistance, drove short distances with her sister, went grocery shopping, visited others, regularly attended church, and was impatient, depressed, and defensive with others. Ms. Taylor stated Plaintiff had experienced "trouble walking" for many years and that pain and an inability to use her left arm limited her activities.

4

Relying on the Tenth Circuit Court of Appeals' decision in Blea v. Barnhart, 466 F.3d 903 (10th Cir. 2006), Plaintiff contends that the ALJ erred by failing to "address Ms. Taylor's observations and their impact on the RFC." Plaintiff's Opening Brief, at 30. However, in the same argument Plaintiff concedes that the ALJ addressed Ms. Taylor's Third Party Function Report in the decision and gave multiple reasons for discounting Ms. Taylor's statements and observation.

In Blea, the appellate court found that the claimant's spouse had testified at the administrative hearing concerning the claimant's physical and mental limitations. The court found the ALJ erred by failing to expressly consider the spouse's third-party testimony or discuss why the testimony was rejected where the testimony corroborated other medical evidence in the record as to the nature and severity of the claimant's mental impairment.

Plaintiff contends that Ms. Taylor's statements were consistent with the findings of a consultative physical examiner, Dr. Acosta, that Plaintiff had left arm weakness resulting from a stroke and disabling pain resulting from degenerative disc disease.

The ALJ considered Ms. Taylor's Third Party Function Report and noted that Ms. Taylor's statements in the Report were "generally supportive of the claimant's allegations." (TR 22). The ALJ discounted the Report because (1) Ms. Taylor was not a medical professional, (2) by virtue of her relationship with Plaintiff she could not be considered a disinterested third party, and, finally (3), the Report contained statements that were not consistent with the preponderance of the opinions and observations of medical doctors in the record. In one respect, however, the ALJ found that Ms. Taylor's statements in the Report

5

were consistent with Plaintiff's testimony at the hearing. The ALJ noted that Ms. Taylor stated Plaintiff was impatient with other people and that Plaintiff testified she disliked most people. The ALJ noted that the RFC assessment included a corresponding limitation that Plaintiff should not work with the public or in customer service. (TR 22-23).

The ALJ's discussion of Ms. Taylor's Third Party Function Report was not, as Plaintiff suggests, an instance in which the ALJ was "pick[ing] and choos[ing] among medical reports, using portions of evidence favorable to his position while ignoring other evidence." Hardman v. Barnhart, 362 F.3d 676,681 (10th Cir. 2004). There is no evidence in the record that Ms. Taylor was a medical professional whose opinions should be considered under the rules governing consideration of medical opinions. Furthermore, the ALJ did not err in considering Ms. Taylor's relationship with the Plaintiff in considering the credibility of Ms. Taylor's statements. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)(ALJ may consider "the motivation of and relationship between the claimant and other witnesses" in evaluating evidence of nonexertional impairment).

The ALJ's decision reflects consideration of Ms. Taylor's statements and recognition that the statements were inconsistent with the medical evidence but consistent with Plaintiff's subjective statements in one instance. The ALJ was not required to make specific written findings as to Ms. Taylor's credibility, because "the written decision reflects that the ALJ considered the testimony." Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996). The ALJ not only discussed Ms. Taylor's Report but also provided reasons that are well supported by the record for finding the statements were only partially consistent with other evidence in the

6

record.

Moreover, the ALJ found that Dr. Acosta's report of his consultative examination of Plaintiff contained internal inconsistencies that lessened its reliability. The ALJ noted that Dr. Acosta "reports the claimant has limitations in her ability to grasp or manipulate objects, but then contradicts this assertion in his narrative where he indicates no difficulties in her ability to pick up and manipulate small objects without difficulty." (TR 21). The record supports the ALJ's finding of an internal inconsistency within Dr. Acosta's report. (TR 1277-1278). Thus, even if Ms. Taylor's vague statements in her Report that Plaintiff was unable to use her left hand were consistent with the portion of Dr. Acosta's report in which he found Plaintiff could not manipulate or grasp small objects, the ALJ provided reasons for discounting the reliability of that portion of Dr. Acosta's report, and Ms. Taylor's statements in this regard were not probative evidence that Plaintiff was unable to use her left arm for fine manipulation or other activities.

Under these circumstances, no error occurred with respect to the ALJ's consideration of Ms. Taylor's Third Party Function Report.

IV. Steps Two and Four - Severe Impairments, Credibility, and RFC

Plaintiff contends that the ALJ erred in failing to find that Plaintiff suffered from a severe impairment due to degenerative disc disease, erred in discounting Plaintiff's credibility with respect to her complaints of pain as a result of this impairment, and erred in failing to include in the RFC finding "any limitations with respect to [Plaintiff's] back pain or her left arm weakness." Plaintiff's Opening Brief, at 37.

At step two, the ALJ must determine "whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-141(1987). This determination is governed by the agency's "severity regulation" at 20 C.F.R. §§ 404.1520(c), 416.920(c). Pursuant to this regulation, the claimant must make a "threshold showing that [her] medically determinable impairment or combination of impairments significantly limits [her] ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 750-751 (10th Cir. 1988).

At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(quotations and citation omitted); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "An ALJ's RFC formulation must be supported by substantial evidence which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and requires more than a scintilla, but less than a preponderance." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008)(internal quotation marks and citation omitted).

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about his symptom(s) and [their] functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence in the record, provided

8

the determinations are closely and affirmatively linked to that evidence." Adams ex rel. D.J.W. v. Astrue, 659 F.3d 1297, 1302 (10th Cir. 2011)(alteration and internal quotation marks omitted).

Plaintiff contends that the ALJ's step two determination is faulty because the ALJ did not consider the objective medical evidence and medications prescribed to Plaintiff for degenerative disc disease. The ALJ recognized that Plaintiff alleged she was disabled, in part, due to degenerative joint disease and that she also alleged her activities were limited due to pain in her lower back and other joints. (TR 19). The ALJ reasoned, however, that Plaintiff's medical records since her alleged onset date showed she had undergone "rather routine and conservative treatment," and that her doctors' visits dealt with "remote medical conditions including rashes, respiratory infection, hypoglycemic episodes and blisters related to herpes" or, on some occasions, did not involve "any particular complaint." (TR 21). Rather, the treatment notes indicated Plaintiff "presented with normal gait" and normal mental findings. (TR 21). The record supports the ALJ's reasoning.

Plaintiff points to x-ray findings in the record showing the presence of degenerative changes in Plaintiff's cervical, thoracic, and lumbar spines. However, a medical diagnosis alone is not sufficient to establish a severe impairment. See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997)(claimant must show more than mere presence of condition or ailment to satisfy step two's requirement of a severe impairment).

There is other medical evidence in the record to support the ALJ's step two determination. In September 2009, Plaintiff reported to Dr. Lawton that she took pain

9

medication only as needed. (TR 1319). In December 2009, Plaintiff sought emergency treatment at a hospitals for back pain occurring for only one week. (TR 1413). X-rays were conducted, and Dr. Davis, the examining physician, prescribed only a short-term dosage of pain medication for back sprain/strain. (TR 1410-1412). Plaintiff did not report any degenerative impairment and denied any pain when she was treated at a hospital in February 2011 for hypoglycemia. (TR 1438-1438). There is substantial evidence in the record to support the ALJ's step two findings, and no error occurred with respect to the ALJ's failure to find that Plaintiff suffered from a severe impairment due to degenerative disc disease at step two.

Given the absence of ongoing treatment for a back-related impairment or pain symptoms in the medical record, the ALJ properly discounted the credibility of Plaintiff's allegations of disabling pain and limitations related to a back impairment. In the ALJ's decision, the ALJ found that Plaintiff's allegations of disabling pain and limitations were not credible for several reasons. First, the ALJ found that Plaintiff's allegations of left-sided weakness were not credible because Dr. Lawton, a consultative examiner and neurological specialist, reported that Plaintiff did not exhibit any signs of a residual left-sided weakness and did not put forth her best effort during a physical examination. (TR 21, 1320). The ALJ also pointed to the report of the consultative psychological examiner, Dr. Danaher, who stated that Plaintiff showed signs of malingering during the evaluation. (TR 21, 1286, 1289-1290).

In discounting Plaintiff's credibility with respect to her allegations of disabling pain

and other symptoms, the ALJ further noted that Plaintiff lived with and helped supervise her mentally challenged sister for whom she served as representative payee since 1999 and that Plaintiff had been advised to stop smoking after her cerebrovascular accident but did not follow this medical advice. The ALJ also considered Plaintiff's statements that she engaged in various daily activities in discounting her credibility. (TR 22). These reasons are well supported by the record.

Plaintiff points to Dr. Acosta's consultative examination report and assessment that Plaintiff had "[c]hronic pain syndrome due to lower back pain with radiculopathy." (TR 1277). However, the ALJ did not ignore Plaintiff's statements that her activities were limited by back pain and other symptoms. Rather, the ALJ's RFC assessment included limitations in several specific exertional activities, including climbing, balancing, kneeling, crouching, crawling, and stooping. Additionally, the ALJ provided reasons that are well supported by the evidence in finding that the medical evidence was not consistent with Plaintiff's allegation of continuing left-sided weakness resulting from her cerebrovascular accident. Moreover, contrary to Plaintiff's argument, Dr. Acosta's report of his consultative physical examination of Plaintiff is not in conflict with the RFC finding. Dr. Acosta noted that Plaintiff exhibited a "stable gait at a slow speed without use of assistive devices" and that she could move "all extremities well." (TR 1277).

Plaintiff alleges that the ALJ did not follow the correct administrative regulations and policy in determining Plaintiff's RFC. However, Plaintiff's sole argument is that the RFC finding should have included a limitation of "no use of left upper extremity or reach, handle,

finger, and feel [sic]." Plaintiff's Opening Brief, at 39. During the administrative hearing, the ALJ questioned the VE concerning the availability of jobs for an individual with various functional capacities. In recognition of Plaintiff's allegation that she was unable to use her left upper extremity and had difficulty gripping objects with her left hand, the ALJ asked the VE whether an individual who could not use her left upper extremity "or reach, handle, finger, feel" with the left upper extremity would be able to perform Plaintiff's past relevant work or other jobs available in the economy. (TR 62). The VE responded that the individual could not perform Plaintiff's past relevant work or any other jobs in the economy. (TR 62).

Ultimately, the ALJ found that Plaintiff's RFC for work did not include limitations for left upper extremity weakness. The ALJ provided reasons that are well supported by the record for this RFC finding. As the ALJ reasoned, Dr. Acosta's report was internally inconsistent with respect to the findings of left upper extremity weakness and Dr. Lawton's report supported the ALJ's RFC assessment. Dr. Lawton reviewed the medical records connected with Plaintiff's cerebrovascular accident and noted that a CT scan conducted at that time was negative and MRI testing at that time showed "no evidence of a significant stroke." (TR 1319). The agency's reviewing medical consultants also provided RFC assessments that support the ALJ's RFC finding. (TR 1352-1353, 1378).

Plaintiff's testimony that back pain and left-sided weakness prevented her from working simply conflicted with her medical records. The ALJ did not err in considering inconsistencies between her testimony and the medical evidence in discounting her credibility. See SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility

of an individual's statements is their consistency, both internally and with other information in the case record.").

There is substantial evidence in the record to support the ALJ's step two and step four findings, and no error occurred with respect to these determinations. In reaching the step five determination, the ALJ elicited vocational testimony from the VE concerning the availability of jobs for an individual with Plaintiff's vocational history and RFC for work. The VE's testimony provides substantial evidence to support the ALJ's step finding of nondisability, and therefore the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ July 31st , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this   11th   day of                    July , 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE